## A89A0512. PACELLA v. SANCHEZ.
(382 SE2d 371)

DEEN, Presiding Judge.

Edward Anthony Pacella brought a petition to adopt the two minor children, a boy and a girl, of his wife Lucinda. Joseph Sanchez answered the petition, claiming that he was the natural father of the children, that after Lucinda moved to Georgia she refused to allow visitation, and that the parties had a support agreement; and he prayed that the petition be dismissed.

The evidence showed that Lucinda Pacella's eldest child, a daughter, was fathered by Pacella while the couple was unmarried. When she was eight months pregnant she married Sanchez, who is listed as the child's father on the birth certificate. Approximately eighteen months later, Lucinda divorced Sanchez, but the child is not mentioned in the divorce decree. A son was conceived during a reconciliation attempt with Sanchez, but Lucinda married Pacella and did not inform Sanchez of her pregnancy until the child was six weeks old. Sanchez immediately went to the Pacella home, visited his son and gave him some clothing. Shortly thereafter, the Pacellas, who were both members of the United States Air Force, relocated from New York to Georgia. Sanchez petitioned the Family Court of New York to legitimate his son, and Lucinda consented to the proceeding. The family went to New York to attend the court proceedings and stayed in Sanchez' home. An Order of Filiation was granted on September 19, 1986, but the court did not award child support or custody, or grant visitation rights. When Lucinda and Sanchez were questioned about child support in the court below, they agreed that they were instructed by the trial judge in New York to reach an agreement on this issue, but that they never presented it to the court.

Sanchez claims that the parties agreed that Lucinda would provide primary care for their son until he (Sanchez) finished school and then the child would alternate between his parents' homes for six-month periods. When the child started school he was to spend his summers with his father. No amount was specified for child support, but "she would call me if she needed anything while I was in school." Lucinda did not refute his recollection of their agreement, as she testified: "I told him whatever amount you can," but added that she had a mental expectation that payments would be "regular." It was not until after Sanchez graduated in December of 1987 that Lucinda made a demand for child support. Sanchez testified that he would give her what she requested. The parties also discussed the transfer of the child's care for six months. Lucinda apparently changed her mind as to the transfer of custody because shortly thereafter the Pacellas obtained an unlisted telephone number. She testified that her purpose was to stop Sanchez' telephone contacts because he would argue

his visitation rights.

The evidence further showed that Sanchez was a full-time student and worked full-time to support himself from the time of the legitimation hearing until December of 1987, when he graduated from school as an aviation mechanic. He claimed that this demanding schedule prevented him from visiting his son in Georgia, but that he did keep in regular contact by telephone and send birthday and Valentine cards to the children until the Pacellas purchased a house and obtained an unlisted telephone number. The adoption petition was filed in January of 1988. Sanchez testified he did not object to Pacella's adopting his own daughter, but he did object to the adoption of the son he had legitimated.

The trial court found that the female child was the natural daughter of Pacella and Lucinda and that the male child was the natural child of Sanchez and Lucinda, and that although Sanchez had legitimated the male child in New York, the court had not entered a support order on behalf of the child. The court further found that for a period of twelve months prior to filing the adoption petition Sanchez sent $20 in child support to his son and clothing valued at $8.99, that Sanchez had a gross income of $13,163, that Sanchez had not seen the child for more than one year, but did, on various occasions, make telephone calls to check on the children's welfare.

The trial court's order granted the adoption petition as to the female child, finding her to be Pacella's natural child, but denied it as to the male child, finding him to be Sanchez' natural child. The court held that while Sanchez may have failed significantly for a period of twelve months or longer immediately prior to the filing of the adoption petition to provide for the care and support of his son, there had been no support decree issued ordering him to support the child and he was therefore not subject to the provisions of OCGA § 19-8-6, which provides for the termination of parental rights when a parent fails to support a child for one year or longer prior to the filing of a petition for adoption. The court, in denying Pacella's motion to adopt Sanchez' son, further found that Sanchez did make a bona fide attempt to communicate with the child during the period of time in question.

Pacella appeals, contending that the trial court erred in ruling that although Sanchez may have failed significantly for a period of twelve months or longer to provide for the care and support of his son, he would not, absent a judicial decree ordering him to pay child support, be required to support the child and was not subject to the provisions of OCGA § 19-8-6. *Held*:

Under OCGA § 19-7-2, "[i]t is the joint and several duty of each parent to provide for the maintenance, protection, and education of his child until the child reaches the age of majority, except to the

extent that the duty of one parent is otherwise or further defined by court order." Sanchez was therefore under a legal obligation to support his child although no court decree ordering such support was in effect.

OCGA § 19-8-6 (b) (2) is, contrary to Sanchez' position, applicable in a case where no court order has been entered. It provides that parental rights may be terminated where a parent has failed significantly to "(2) provide for the care and support of the child *as required by law or judicial decree,* where the court is of the opinion that adoption is for the best interests of the child." (Emphasis supplied.) In *Kirkland v. Lee,* 160 Ga. App. 446 (287 SE2d 365) (1981), this court held that the intent of the legislature in enacting the present version of this code section in 1979 was to resolve the issue of the parent's justification for the non-payment of support or failure to communicate with the child in the context of whether the severance of the parental relationship would be in the best interests of the child.

Under *Kirkland,* supra at 450, "an order granting an adoption need only contain specific and articulated findings that the parent 'has failed significantly' for a one year period to communicate with or provide support for his child and that the adoption [was] in the child's 'best interests.' " *Kirkland* therefore establishes the findings necessary to *grant* an adoption. The instant case, however, is an appeal from the denial of an adoption, and the trial court used an erroneous legal theory in concluding that appellee had not failed to provide for the care and support of his child. Upon remand, the trial court, with the proper legal theory in mind (that appellee, as a parent, had a legal duty to support the child under OCGA § 19-7-2), must review this case and decide whether the support provided the child by appellee, labeled "not sufficient" by the trial court in its order, is tantamount to appellee's having "failed significantly" to provide for the care and support of the child. Should the trial court conclude that appellee did fail significantly to provide for the child's care and support, *then* the trial court must determine whether, despite appellee's financial shortcomings, adoption is in the best interests of the child.

*Judgment reversed and case remanded with direction. Birdsong and Benham, JJ., concur.*

DECIDED MAY 4, 1989 —
REHEARING DENIED MAY 22, 1989 —

*Bennett, Wisenbaker & Bennett, Michael S. Bennett,* for appellant.

*Mary Jane Yorke*, for appellee.